## SMITH v. PRICE.

### Opinion delivered October 30, 1916.

1. SPECIFIC PERFORMANCE—DISCRETION OF CHANCELLOR.—Specific performance is not always granted as a matter of right, but rests in the sound discretion of the chancery court.

2. SPECIFIC PERFORMANCE—DISCRETION OF CHANCELLOR.—A. agreed to sell certain land to B. for a certain sum, but before the trade was consummated B. discovered that the land was subject to two mortgages. B. purchased one of the outstanding mortgages, foreclosed the same and purchased at the sale; thereafter A. redeemed from the said sale, said redemption being resisted by B. Held, under the facts, it was not

an abuse of his discretion where the chancellor, at the suit of B. refused to order a specific performance of the original contract in his favor.

Appeal from Prairie Chancery Court; Southern District; *John M. Elliott*, Chancellor; judgment modified.

*R. J. Smith*, of Iowa, and *Manning, Emerson & Morris*, for appellant.

1. Appellant is entitled to specific performance. The contract is plain and unambiguous, appellant paid the cash payment called for by it, and, as appears by the undisputed evidence, he is and has at all times been ready, willing and able to perform his part of the contract. The court's authority to grant the relief is beyond dispute. Pomeroy, Eq. Jur., 3d ed., § 1402; 36 Cyc. 552. There has been no default on appellant's part. On the contrary, it is shown that he exerted every effort to get the deal closed, whereas, as a matter of law he was only required to hold himself in readiness to perform. 36 Cyc. 706; Pomeroy, Eq., Jur., 3d ed., 1407, and note.

Tendering a deed and good abstract and the payment of $1,500.00 were concurrent acts, and such abstract not having been tendered, appellant cannot be said to be in default. *Supra;* 22 Pac. 951-3 and cases cited.

The contention that appellant is barred by laches cannot be maintained. There is no such unreasonable or unexcused delay on his part in the enforcement of his rights as to constitute laches. 20 R. I. 202, 37 Atl. 804-5; 49 Pac. 769-772; 100 Ark. 399-403.

2. If specific performance cannot be decreed, appellant is entitled to damages for loss of rent, to a return of the sums paid on the purchase price, and to the difference between the contract price and the market value of the land. Pomeroy, Eq. Jur., 3d ed., §§ 181, 231; 75 Ark. 52; 77 Ark. 570-576; 111 Ark. 329; 113 Ark. 100.

*John L. Ingram*, for appellee.

1. Appellant is not entitled to specific performance.

The proof shows that while appellant was insisting upon an unencumbered title, he was exerting himself to prevent appellee from removing the encumbrances, even trying to acquire title to the land in the name of his daughter-in-law.

There has never been any actual tender of the purchase money.

In the exercise of a sound discretion courts of equity generally refuse to grant specific performance where the case is not clear or where the complainant is in the wrong or there are considerable countervailing equities. 34 Ark. 663; 12 Ark. 421 and 451; 1 Pomeroy's Eq., 2d ed., §§ 138, 400; *Id.* § 1405.

McCULLOCH, C. J. This is an action instituted in the chancery court of Prairie county by appellant, R. B. Smith, against appellees to require the specific performance of a contract executed by him and appellee, W. M. Price, for the sale and purchase of a tract of 240 acres of land situated in said county.

Price owned the lands in question, which were encumbered by two mortgages to secure amounts aggregating about $4,000.00, neither of which mortgages were, however, executed by Price. The mortgages were executed by Price's grantors prior to his purchase. Price entered into a written contract with appellant, dated October 31, 1906, for the sale of the land at the price of $9,500.00 of which $500.00 was paid. The contract contained an agreement that Price would rent the lands for a period of five years at an annual rental of $6.00 per acre, and that he would build on the land a pumping plant at a cost of $2,000.00. The contract specified that appellant was to pay the price as follows: "$500.00 down; $1,500.00 when deed and title are accepted by second party; $2,000 when rice pump and plant of that cost are put on said premises in acceptable manner for the purposes of

rice culture thereon, but not prior to January 1, 1907, balance purchase price payable in five equal payments fo $1,100 each on November 10 of each year hereafter until all are paid with interest at the rate of 5 per cent. per annum from November 10, 1907, until paid."

The $500.00 cash payment was, as before stated, paid, and appellant executed his notes to Price in conformity with the contract, and the notes, together with the deed, were placed in a bank at Stuttgart in escrow until an abstract of title could be furnished and examined by an attorney. The contract made no reference to the prior mortgage liens, but their existence was disclosed by the abstract and the attorney who examined the title declined to approve it until the liens should be removed. The papers were sent by the Stuttgart bank to another bank at appellant's home in the State of Iowa, negotiations being pending between the Iowa bank and Price for the sale of the notes. The Iowa bank made inquiry of appellant about the validity of the notes, and he called attention to the fact that there were mortgage liens on the property which had to be removed before the sale would be consummated, and that he would not consent to a sale and delivery of the notes until those liens were discharged. Correspondence took place between appellant and Price about allowing the notes to be sold and the mortgage liens discharged out of the price to be received from the notes, but Price would not consent to that when requested and the notes were not sold.

Subsequently appellant's son, who was acting as his attorney and agent, purchased one of the mortgages and proceeded to foreclose the same under the power contained therein, and the lands were purchased at the mortgage sale by the wife of appellant's son. The evidence shows that the purchase was really made for the benefit of appellant himself. Within one year from the date of the sale, Price attempted to redeem, from the mortgage sale by tendering the amount of the debt, interest and cost of sale to the purchaser, but the

tender was refused, and Price thereupon brought suit in the chancery court of Prairie county to compel an acceptance of the amount in redemption of the land from the mortgage sale. Appellant was made a party to that action and appeared and resisted Price's effort to redeem, but the chancery court decreed the redemption and that decree was affirmed by this court on appeal. 102 Ark. 367. The record in that case shows that appellant, in his effort to resist Price's right to redeem, set up in a cross-complaint the latter's contract with him for the sale of the land. The cross-complaint was stricken out by the court, and that ruling was the basis of the appeal to this court. It was held here that the counter-claim did not set up any matter connected with the foundation of the plaintiff's claim, and was, therefore, not properly a matter for relief in that action.

(1) The present action was instituted on October 5, 1911. On final hearing of the cause the chancery court denied the prayer for specific performance, but decreed the recovery by appellant of the sum of $500, the cash payment made under the contract. We think the decree of the chancellor was correct in so far as it denied specific performance of the contract. It has been held by this court that specific performance is not always granted as a matter of right, but rests in the sound discretion of the chancery court.

In *Watkins* v. *Turner*, 34 Ark. 663, this court said: "Decrees for specific performance were not originally granted in any case as matter of course. They rested in the sound discretion of the chancellor upon all the equities of the particular case, the manifest right of complainant, the hardship of the case, and the inadequacy of the legal remedy. Afterward, when the principles upon which this kind of relief was usually granted became established, it came to be considered the duty of the courts to grant it, upon clear cases coming within the principles, but they have always reserved the right of sound discretion, and generally refuse the specific relief, where the case is not clear, or where the

complainant is in the wrong, or there are considerable countervailing equities. In such cases, it remains competent for courts of equity to refuse to interfere, but to leave the parties to those rights and remedies at law established for the general administration of justice."

Professor Pomeroy, in his work on Equity Jurisprudence, said: "It is sometimes said that the remedy of specific performance rests with the discretion of the court; but rightly viewed, this discretion consists mainly in applying to the plaintiff the principle, he who comes into a court of equity must come with clean hands, although the remedy, under certain circumstances, is regulated by the principle, he who seeks equity must do equity. The doctrine, thus applied, means that the party asking the aid of the court must stand in conscientious relations toward his adversary; that the transaction from which his claim arises must be fair and just, and that the relief itself must not be harsh and oppressive upon the defendant." Pomeroy's Eq., Vol. 1 (2 ed.), section 138.

(2) Appellant had the right to insist that the mortgage liens be discharged or that he be protected therefrom before the consummation of the trade, and he was entirely within his rights in refusing to consent to a delivery and sale of his notes until those liens were discharged. He was likewise within his rights in purchasing the outstanding mortgage lien for the purpose of protecting the lands from foreclosure. But we are of the opinion that appellant put himself in an inconsistent attitude toward the performance of the contract when he foreclosed the mortgage and bought in the land, and refused to allow a redemption, thus cutting off Price's title and permitting performance of the contract. His attitude in purchasing the title under the foreclosure, which the proof shows he did by taking the title in the name of his son's wife, was inconsistent with his rights under the contract for the reason that the divestiture of title out of Price by the foreclosure put it beyond his power to perform the contract by conveying the land. The fact that appellant's effort to secure the

title under the foreclosure failed, on account of Price's redemption from the sale, did not restore appellant's abandoned right to a specific performance of the contract. Having thus put himself in an inconsistent attitude, it was a fair exercise of the chancellor's discretion to say that he can no longer invoke the equitable remedy of specific performance.

We are of the opinion, however, that the court erred in not decreeing to appellant, in addition to the $500 paid, the further sum of $492.70, which was earned by appellant as commission on sale of other land, and which was in fact credited by Price on the notes. This constituted a payment as much as did the actual payment of the sum of $500, and we see no reason why a distinction should be made between the two payments.

The decree, so far as it denies the specific performance of the contract, is affirmed. But judgment will be entered here in appellant's favor for the sum of $492.70, with interest from date of credit on the notes, in addition to the recovery of the $500 allowed by the chancellor. It is so ordered.

KIRBY, J., dissenting.