WHITTENBURG v. GROVES.
(No. 41–2696.)*

(Commission of Appeals of Texas, Section B. Feb. 19, 1919.)

1. VENDOR AND PURCHASER ⬅110—REPUDIATION BY SELLER—RIGHT OF PURCHASER.

Where seller of land refused to perform and repudiated obligation, buyer had right to have contract enforced by suit, if he was willing to take such title as seller could convey, and also had right to accept seller's repudiation and treat contract as abandoned.

2. VENDOR AND PURCHASER ⬅190 — PURCHASE OF OUTSTANDING TITLE — RIGHT OF PURCHASER.

Purchaser of land was within his rights when he purchased and had conveyed to him apparent outstanding title in heirs of third person, purchase not being inconsistent with his right to have vendor perform by conveying whatever title he had.

3. VENDOR AND PURCHASER ⬅86—ABANDONMENT OF CONTRACT—ASSERTION OF OUTSTANDING TITLE.

Assertion by purchaser of land of title obtained from heirs of third person by bringing against seller suit in trespass to try title to recover land in reliance on outstanding title, held to have amounted to abandonment and repudiation of contract of purchase which was no longer enforceable, either by buyer or seller.

4. SPECIFIC PERFORMANCE ⬅61—CONTRACT FOR SALE OF LAND — PURCHASE OF OUTSTANDING TITLE.

Purchaser of land who acquired from heirs of third person an outstanding title, and sued seller in trespass to try title to recover land,

but lost suit, held not entitled to specific performance of contract of sale; bringing of action having been repudiation of contract.

5. SPECIFIC PERFORMANCE ⬅61 — CONTRACT FOR SALE OF LAND—ABANDONMENT OF CONTRACT—FIRST DEFAULT OF OTHER PARTY.

Principle, that where party to contract defaults he cannot set up subsequent default of other party to relieve him from liability, has no application to give purchaser of land right to specific performance of contract which he abandoned by assertion by suit of outstanding title acquired from third persons, though seller was first in default by refusing to perform.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by J. A. Whittenburg against R. F. Groves, resulting in judgment for plaintiff, which was reversed by the Court of Civil Appeals (165 S. W. 889), and plaintiff brings error. Cause remanded to the trial court for new trial on recommendation of the Commission of Appeals.

Veale & Davidson, of Amarillo, for plaintiff in error.

R. E. Taylor and W. T. Allen, both of Henrietta, for defendant in error.

MONTGOMERY, P. J. This suit was instituted by plaintiff in error, J. A. Whittenburg, to compel the specific performance of the defendant in error, R. F. Groves, of a contract for the sale of two sections of land situated in Hutchinson county, Tex. The contract sought to be enforced was in writing and is here copied:

"The State of Texas, County of Hutchinson:

"Received of J. A. Whittenburg the sum of $210.00 as part payment on the following described land, situated in Hutchinson county, Texas, and known as follows, to wit:

"Section No. 30, block M. 23, T. C. Ry. Co., containing 640 acres; also all of section No. 6, in block R. 2, D. & T. Ry. Co., containing 640 acres, and I hereby agree to make the said Whittenburg a good and perfect conveyance conveying to him the absolute title to the same, save and except the claims of the state for purchase money, reserving a vendor's lien for the balance of the purchase price, to wit, four notes of $500.00 each, to become due and payable in one, two, three and four years, respectively after date, the balance of the cash payment to be paid when deed is delivered, in the sum of $790.00.

"The condition of the above obligation is dependent upon my being able to perfect the title held by me under deed from W. B. Ware as administrator, and the compliance on the part of the said Whittenburg in the execution and delivery of the notes hereinbefore referred to, which are to bear 8 per cent. interest per annum, and payable at Shamrock, Texas.

"Witness my hand this the 10th day of February, 1906.                    J. A. Whittenburg.
                                                        "R. F. Groves.

"Witness: Ben H. Kelly."

The plaintiff in error, Whittenburg, in addition to setting out the contract, alleged that when the contract was made Groves was claiming the land referred to therein under a deed from one W. B. Ware purporting to act as the administrator and the executor of the estate of C. L. Johnson, deceased, and that by the contract Groves bound himself to convey said land to Whittenburg, and further bound himself that if the title was imperfect he would perfect the same and then convey the land; that in fact Groves' title was good, and if it was not in fact good then it has since been perfected. Plaintiff prayed for a specific performance of said contract.

Groves in his answer, among other things, alleged that after the execution of the contract, and in the early part of the year 1911, Whittenburg, the plaintiff in the court below, secured from the heirs of C. L. Johnson and Vienna Johnson, his wife, both deceased, quitclaim deeds conveying all the right, title, and interest of said heirs in the land in controversy to said Whittenburg, and that said Whittenburg, relying on the title so acquired, brought an action of trespass to try title against the defendant Groves seeking to recover the identical land described in the contract above, and prosecuted said suit of trespass to try title to final judgment, and that the judgment in said suit was in favor of the defendant Groves, and that plaintiff take nothing.

The facts alleged were relied upon by Groves both as res adjudicata and as constituting a repudiation and abandonment of the contract of sale on the part of Whittenburg.

The evidence showed the execution of the contract of sale as alleged. It also appears that about February, 1909, Groves, in a conversation with Whittenburg, refused to perform the contract, although at that time Whittenburg was ready, able, and willing to perform it and then offered to do so; that Groves then claimed that the contract was conditioned upon his being able to perfect the title to the land, and he then claimed that he had lost one-eighteenth of it in a suit brought by one of the Johnson heirs; and that he had been advised by his lawyers that he was not bound by the contract and he at that time positively refused to carry it out. The plaintiff Whittenburg, testified on the trial of this case that he at all times had been ready, able, and willing to perform the contract.

It was also shown that, after the execution of the contract between Whittenburg and Groves, one of the heirs of C. L. Johnson, deceased, filed suit against Groves and recovered an undivided one-eighteenth interest in the land.

The plaintiff, Whittenburg, in the years 1910–11, secured deeds from various heirs of C. L. Johnson and Vienna Johnson conveying to him the land in controversy.

On March 30, 1911, Whittenburg filed an action of trespass to try title against Groves and others to recover the land described in the contract. The case was tried and judgment rendered in favor of the defendants, Groves and others; the judgment being dated March 4, 1913. The original petition in this suit for specific performance was filed March 3, 1913, being one day before the date of the judgment in the trespass to try title case.

In the case of trespass to try title, plaintiff, Whittenburg, asserted title only under the deeds from the Johnson heirs, and the contract of sale was not in any manner involved in the issues made by the pleading or the evidence.

On the trial of the specific performance case from the judgment in which this appeal is prosecuted, the court gave the jury a peremptory charge to find for the plaintiff, and on the verdict rendered judgment in favor of the plaintiff, Whittenburg, specifically enforcing the contract. This judgment was reversed by the Court of Civil Appeals (165 S. W. 889), said court holding in effect that the giving of such peremptory charge was improper and that the evidence required the submission of the issue of abandonment of the contract on the part of Whittenburg to the jury. Writ of error in this case was applied for by J. A. Whittenburg.

Opinion.

For the purposes of this opinion we may concede that Whittenburg was entitled to a specific performance of the contract of sale, unless the evidence shows that he had himself repudiated the contract of sale and thereby placed himself in such a position with reference to the contract as required a court of equity to refuse to enforce it at his instance.

[1] Groves in the year 1909 had positively refused to perform the contract and repudiated the obligation imposed on him by its terms.

Whittenburg then had the right to have enforced the contract by suit provided he was willing to take such title as Groves could convey. He also had the right to accept Groves' repudiation of the contract and thereafter treat the contract as abandoned and canceled.

[2] He was within his rights when he purchased and had conveyed to him the apparent outstanding title in the heirs of Johnson, because this purchase was not inconsistent with his right to have Groves perform his contract by conveying such title as he had.

[3] We think, however, that when he asserted the title obtained from the heirs of Johnson against Groves by bringing the suit to recover the land, relying upon that title, his act amounted to an abandonment and repudiation of the contract of purchase from Groves, and that the contract thereafter

should be treated as abandoned by both parties and no longer enforceable at the suit of either.

"Abandonment of the contract may be inferred from circumstances or the conduct of the parties inconsistent with, an intention to perform." 36 Cyc. 720.

"It is an acknowledged rule of equitable jurisprudence that a party entitled to a specific conveyance of property, personal or real, will not be permitted to hold back from an assertion of his rights, and speculate upon the chances of such changes as may decide whether it would be to his interest to have such conveyance made; but he is required to be vigilant and prompt in the assertion of those rights." De Cordova v. Smith, 9 Tex. 129, 58 Am. Dec. 136.

All the elementary authorities announce the principle that in a case of this character a party will not be permitted to speculate upon the chances of profit growing out of such contract, but, as said by one court:

"The plaintiff must show that he has always been ready, willing, and eager to perform the contract." Phelps v. Railway Co., 63 Ill. 468; 22 Am. & En. of Law, 1062.

In the case of Kelly v. Short, 75 S. W. 887, the Court of Civil Appeals had under consideration a case where the plaintiff was demanding a performance of a contract with reference to real estate. It appeared that after making the alleged agreement both parties disregarded the agreement and conducted litigation with reference to the subject-matter of the agreement. The court held that, by so conducting the litigation and setting up claims to the property inconsistent with the agreement, both parties had repudiated it, and that neither could thereafter be heard to say that the agreement was in force.

The case of Smith v. Price, 125 Ark. 589, 189 S. W. 167, is directly in point. In that case there was an executory contract by which Price agreed to sell certain lands to Smith. There was a mortgage upon the land which it was necessary to have released before Price could convey good title. Smith purchased the mortgage and foreclosed the same and caused the property to be bought in for his benefit. Price under the law had a right to redeem the property by paying the debt, but Smith refused to permit redemption, and Price brought suit to enforce his right to redeem, which suit was resisted by Smith. The court by its judgment permitted Price to redeem the land. Afterwards Smith brought suit for a specific performance of the contract to convey the land. The court held that Smith by his conduct had repudiated the contract by setting up a claim inconsistent with it, and was therefore not entitled to have it enforced. In this case Whittenburg, after Groves had refused to perform the contract, made no effort by suit, or otherwise, for a period of about two years to en-

force the contract. Instead of insisting upon the contract, if he desired to claim its benefits, Whittenburg purchased an adverse claim to the land, and relying upon such claim brought suit to recover the land from Groves and prosecuted said suit to final judgment. Whittenburg by setting up an adverse title must be held to have abandoned the contract, and therefore had no right to maintain a suit for the specific performance thereof. The very fact that he claimed an adverse title and undertook to assert it was inconsistent with the right which he now claims to have Groves convey the land to him. His suit was an assertion that Groves had no title to convey.

The suit instituted by him for the specific performance of the contract, as shown by the record, was filed only one day before the judgment was entered in the trespass to try title case, and it seems to us evident that the filing of the suit for specific performance at this time was but an effort on his part to escape the consequences of the judgment against him in the trespass to try title suit, which he probably foresaw. Even after filing the specific performance suit, and after the judgment was rendered against him in the suit of trespass to try title, Whittenburg made a motion for a new trial in the trespass to try title case and insisted thereon and gave notice of appeal. At the time of the trial of this case the year had not expired during which he was authorized to take said trespass to try title case to the Court of Civil Appeals by writ of error. Thus it appears that Whittenburg had two suits pending at the same time, a judgment in one of which in his favor would be absolutely inconsistent with any judgment which might be rendered in his favor in the other.

[4] We do not think a court of equity should permit a plaintiff to speculate and take his chance of recovery of the title to the land, and after having lost it then claim the benefit of the contract. The evidence, we think, conclusively shows that, if Whittenburg had been successful in the trespass to try title suit, there would not have been any offer on his part thereafter to take the land under the terms of the contract.

Our conclusion is that under no view of the testimony had Whittenburg a right to a specific performance of the contract.

The case of Moore v. Snowball, 98 Tex. 16, 81 S. W. 5, 66 L. R. A. 745, 107 Am. St. Rep. 596, Mortgage Co. v. MacDonell, 93 Tex. 398, 55 S. W. 738, and like cases cited by the plaintiff in error, we think, have no application to the facts in this case.

In Moore v. Snowball the question was whether the first suit of trespass to try title to recover the land involved in that suit was a bar to a subsequent suit to set aside a judicial sale by reason of irregularities and inadequacy of price. The Supreme Court in that case held that the first suit was no bar.

It will be noticed that in Moore v. Snowball no contractual relation existed between the parties, and therefore the question of what constitutes a renunciation or the abandonment of a contract was not involved.

In the case of Mortgage Co. v. MacDonell, the mortgage company had foreclosed a deed of trust by means of a trustee's sale, and, having purchased the property at such sale, brought suit in trespass to try title. The suit was defeated by MacDonell upon the ground that the sale was a nullity. In a subsequent suit brought by the mortgage company to foreclose the lien of the deed of trust, the defendant, MacDonell, pleaded the former judgment as a bar. The court held that the former suit did not bar the foreclosure suit. This was evidently correct, but this case can have no controlling effect in the case at bar. In the case referred to it is clear that the trespass to try title suit did not involve a repudiation of the lien secured by the deed of trust. In fact, the validity of the deed of trust was necessarily asserted in the first suit, as the title was claimed through an alleged foreclosure of the deed of trust. Therefore there was nothing inconsistent between the attitude of the plaintiff, the mortgage company, in the first and second suits brought by them.

We wish it understood that we do not hold that the judgment in the trespass to try title suit brought by Whittenburg against Groves is res adjudicata, and for that reason barred the prosecution of the suit for specific performance. What we do hold is that Whittenburg's attitude was such as conclusively shows a repudiation of the contract by him, and that for this reason he should not be permitted to have it specifically enforced.

[5] The plaintiff in error also contends that Groves, having been first in default by refusing to perform the contract, could not thereafter defend the suit for specific performance on the ground of default on the part of Whittenburg. This principle, we think, has no application to this case. It is true that, where one of the parties to a contract defaults in the performance of the contract, he cannot set up a subsequent default of the other party to relieve him from liability for his own wrong. This principle might have had application if Whittenburg, after the renunciation of the contract, had brought suit for damages for the breach of the contract and Groves had undertaken to defend the suit upon the ground that Whittenburg had also failed to comply with some particular term of the contract. It might also have applied if Groves was defending this suit on the ground of some alleged breach of the contract, not involving its repudiation. The facts are that Groves breached and repudiated the contract and Whittenburg accepted the repudiation by Groves and himself renounced it by asserting rights not under the contract or by reason of its breach, but rights inconsistent with any right which could have accrued to him under the contract or by reason of its breach.

The record shows that Whittenburg at the time of the execution of the contract paid $210, and that this sum was deposited in a bank with an agreement that same should be paid to Groves whenever the contract was executed by a conveyance of the land. Whittenburg is, of course, entitled to have this sum returned to him.

Our conclusion is that under the undisputed facts plaintiff in error, Whittenburg, is not entitled to a specific performance of the contract. As the Court of Civil Appeals reversed the judgment of the trial court and remanded the cause for a new trial, and as the defendant in error, Groves, has not complained of said action of the Court of Civil Appeals, we advise that in our opinion this cause should be remanded to the district court of Carson county for a new trial and for proceedings not inconsistent with this opinion. We think the costs of appeal and writ of error should be taxed against Whittenburg.

PHILLIPS, C. J. The judgment as recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission.